Good afternoon, Chief Judge. May it please the Court, I represent Mr. Yan Jin-shin, that's Y-A-N. I'm here this afternoon on one issue, which is the identification, or rather maybe the lack of identification of the defendant, Yan. At trial, the one witness that testified that she was disregarding an extortion case, the one witness that testified that she was threatened and slapped by a couple of individuals, one named Jin Hong and the other one named Yan Jin, failed to identify, or rather identified that my client, Mr. Yan, was not the person who did these things to her. There were several other witnesses that testified that they could identify my client, Mr. Yan. However, repeatedly they testified they were never threatened in any way, even after repeated attempts to collect on money that was borrowed from them. The first witness, Ms. Fu, that's F-U, testified that she was taken to a secluded area and was threatened and then slapped by a co-defendant, in this case, Mr. Hong. At trial, Ms. Fu identified the co-defendant, Mr. Hong. However, when asked if she could identify the defendant, Yan, she said, I do not know this person. At one point, the judge instructed my client, Mr. Yan, and the witness, Ms. Fu, to stand up so they could see each other without any obstruction. The judge asked Ms. Fu, can you see the person standing in the room? She said, I can see that person. Is this the person you're referring to as Yan Jinxin? He said, I do not know this person. The second witness, in this case, Ms. Yu, that's Y-U. And I'm trying to spell it out so that I keep everybody in track of the Chinese-sounding names. The second witness testified that she borrowed money. In fact, when they asked her, did she have any collateral, she said she had no money, but she had a passport. She willingly gave her passport over. She made, I believe, several payments but never completed the money that was owed. She was never threatened. She testified to that. All that she testified to was that she was asked repeatedly if she could pay the money back. The third witness, Ms. Xu, that's X-U, testified she had a gold ring as collateral. She was asked if she was threatened. She also said she was never threatened. One thing that I need to say to put this into context is the people involved in this case are Chinese government workers, and they often come to the CNMI on a two-year work permit. They don't traditionally have financial statements or a credit history. Oftentimes, they wouldn't qualify for a loan if they went to a traditional bank. And sometimes they borrow among themselves. There's a lot of testimony that they were charged high-interest loans. The typical scheme is $3 for every $100 a day. Granted, that's probably usury, but it's not extortion. And they willingly went into this knowing full well they were going to be charged high-interest loans. What about the passport, the withholding of the passport after she requested it be returned to her? With all due respect, Your Honor, she voluntarily surrendered. When asked, you know, did she have any collateral, she said, I don't have any except for my passport. She willingly gave that up, and she knew she had to pay her loan back. At no time was the passport destroyed. In fact… Well, isn't it coercive to withhold the passport if the person needs it in order to work? To the extent that they need to renew their passport, that's probably true, Your Honor. But it was never – there was no testimony regarding we're going to burn the passport or throw it away or, you know, fail to give it back. It can be argued by the prosecutor. Why did they have it? She willingly gave them the passport. They never asked her for the passport. They asked her for a collateral. She said, I have my passport. You can hold on to it. Make sure that I come back and I pay the money. That much she testified to. It's the same story with the renewal. I may have misunderstood the message of your briefs, but isn't your primary concern the failure to identify the defendant in court? That is correct, Your Honor. Let me ask you, is there any dispute that Mrs. Pugh identified the perpetrator with the photo shortly after the incident? Is there any question that that was the defendant's photo identification? There were videos and there were also photos that were taken shortly after the arrest. Yes. She identified the person in the photo. She satisfied both, didn't she? That is – at least our position, Your Honor, is that in court, in person, not much distance from here to that desk, Your Honor, she was looking at Defendant Yan Junshin and said, I do not know that person. I don't know if this is evidence, but the judge indicated that the defendant looked very different. It looked like two different people. Is there any case that suggests it's absolutely essential to pass the in-court identification question? Or is there cases to the contrary? I don't know of any case that says identification has to be absolute. I do know, Your Honor, that the defendant has to be identified. The key point here, Your Honor, is that the only person who testified of any type of extortion failed to identify Mr. Yan Junshin in court after repeated attempts by the government. That's your point. Her failure to identify the defendant in court is the basis, really, for your appeal. Yes, Your Honor. I believe I have a few more minutes. You have about two minutes left. If no more questions from the panel, I'll reserve that. You may do so. Thank you very much. I please the Court. Karen Johnson appearing for the United States. Good afternoon. I think the Court has put its finger on the question. Our position, of course, is that the law does not require an in-court identification. It requires the jury, of course, to find that the named person has committed the offense. The defendant conceded that he and Wang had loaned her the money, conceded that they had met with her, that they were on the videotape, both of them, getting the FBI money that the FBI had planted and that she gave back to them, conceded that it was his car that they were using, and didn't dispute the fact that his confederate, Mr. Wang, had indeed slapped her or threatened to throw her off a suicide cliff. Our position is that the jury can decide for itself whether the man identified in the movie as the defendant and identified in his photo as the defendant is, in fact, the man sitting in court, and they decide that he was. Is there anyone else that it could have been? There's no defense that it wasn't me, it was somebody else? There was no such defense, and as the Assistant U.S. Attorney who tried the case has said, these two were joined at the hip. They seemed to, in a business sense, be together in every one of the transactions, together when they loaned her the money, together when they attempted to collect it on several occasions. There's no one else that it could have been, which, of course, is a better inference, or one of the inferences that, in fact, the defendant is properly named. Is that videotape available now, the one that was showed to the jury? Oh, yes. It's over in Saipan, of course, but it definitely is available. But we can get a hold of it and look at it. Was there any point made in the argument to the jury that the videotape person was also the Yan who was present in the courtroom? She testified that the two men who always acted together, Wang and Yan, whom she identified as being Mr. Yan, Yan was the man in the tape. It's just that when she got into the courtroom and she saw these two men, she identified Mr. Wang, but she looked at Mr. Yan and says, I don't know this guy. But there was no question that Mr. Yan was the defendant in the videotape. Thank you. Thank you. May I just rebut for a moment? Do you agree that the man in the video was the defendant? I agree, Your Honor, obviously. It puts my position in. My question is, actually, my point is that the jury was not privy to that information. They made a connection that wasn't there, that the two, the second and the third witnesses, obviously, enormous amount of testimony that these people did not do any violence to them. The first – The jury didn't see the tape? The jury saw the tape, Your Honor, but even if – obviously, the court is privy to watch the tape. In the tape, there is no mention of we'll beat you up, we'll slap you. In fact, at one point in the video, she asked, I don't have the $100. I'll give you something less than that. And she said, we'll take the money and we'll never bother you again. I mean, hardly the actions of hardened criminals. There was nobody around. It was an enclosed place in an apartment. The tape was on. They did not know that. They weren't acting to the tape. They came and they were owed money. They just came and borrowed the money. I tried to retrieve the money. That was it. The only person that had any testimony regarding violence, and that's just herself. There is no corroborating evidence other than her testimony, could not identify my client. Any questions? No questions? There don't appear to be any. Thank you, counsel. Thank you very much. The case just argued is submitted for decision.
judges: Schroeder, Goodwin, George